NOTICE
Decision filed 08/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240365-U

NO. 5-24-0365

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-CF-617 |
| | ) | |
| ANDREW McKISSICK, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice McHaney and Justice Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We grant defense counsel leave to withdraw and affirm the circuit court's denial of defendant's motion to withdraw his guilty plea, where counsel's motion, pursuant to *Anders v. California*, 386 U.S. 738 (1967), presented no arguably meritorious issues.

¶ 2     Defendant, Andrew McKissick, appeals the circuit court's order denying his motion to withdraw guilty plea. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that there is no reasonably meritorious argument that the court erred. Accordingly, OSAD filed a motion for leave to withdraw as counsel and supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). OSAD notified defendant, and this court provided defendant with an opportunity to respond, but he has not done so. After considering the record on appeal and OSAD's motion and supporting memorandum, we agree that this appeal presents no

1

arguably meritorious issue. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    I. Background

¶ 4        On May 10, 2019, the State charged defendant by indictment with first degree murder, arson, and aggravated battery. The charges stemmed from an April 22, 2019, vehicle fire in O'Fallon, Illinois, where officers found a Kia Optima on fire and the body of Sherry Billups, defendant's wife of two months, on fire on the ground behind the vehicle with severe burns to her face, torso, and arms. Billups later died as a result of these injuries. After waiving his *Miranda* rights, defendant informed officers that he purchased lighter fluid at a truck stop, which officers later confirmed through credit card records.

¶ 5        On June 5, 2019, defendant's counsel, Grant Menges, requested the circuit court appoint Dr. Dan Cuneo to evaluate defendant's fitness to stand trial. Dr. Cuneo's report found defendant fit, concluding that defendant was feigning psychosis by exaggerating his symptoms, and that any hallucinations he experienced did not prevent him from understanding or assisting in his defense. After defendant waived his right to a hearing and agreed he was fit, the court subsequently found defendant fit to stand trial. The court appointed Dr. Cuneo to conduct a second fitness evaluation. Dr. Cuneo determined defendant fit, and the court subsequently found defendant fit to stand trial.

¶ 6        On November 4, 2021, the circuit court held a status hearing, at which time, defendant stated that he felt unprepared for trial because his environment in prison made it difficult for him to access and view discovery materials. Menges explained that he sent DVDs to defendant in jail, but defendant could not play the videos. Menges then requested that the court issue a standing order to allow defendant to review discovery material at defense counsel's office. The court denied Menges's request.

2

¶ 7     On July 17, 2022, defendant sent the circuit court a letter alleging Menges did not know the facts of the case and bullied him into accepting a plea deal. He claimed Menges told him that discovery material would not help his case, and that defendant would die in jail if he went to trial. Defendant claimed Menges withheld discovery for the last three years, and that Menges tried to convince him to take a plea because he had no defense.

¶ 8     On July 27, 2022, the circuit court held a status hearing, at which time, defendant repeated the allegations in his letter. While explaining the circumstances under which he would plead guilty, the court advised defendant not to say anything that could be used at trial. At one point, defendant stated before the court that he was "not denying that the incident took place." The court ordered the State to send defendant redacted copies of discovery, including DVDs. The court informed defendant that his claims did not rise to the level of ineffective assistance, thus, the court would not appoint new defense counsel.

¶ 9     On January 20, 2023, the State filed several pretrial motions, including a notice of intent to seek a life sentence. Menges filed a notice that it might present an affirmative defense of use of force in defense of a person. That same day, Menges informed the circuit court that defendant requested him to call several irrelevant witnesses to the stand. The court explained to defendant that such decisions were within defense counsel's discretion. Defendant stated that he would plead guilty in exchange for a life sentence or even a death sentence because he would rather die. Menges stated, again, that defendant's requested witnesses were irrelevant and constituted bad trial strategy to call them to the stand.

¶ 10    On January 26, 2023, the circuit court held a Rule 402(d) conference. Menges noted that the parties contemplated a plea to "standard" first degree murder with a sentence of 20 to 60 years' imprisonment served at 100%. Menges, however, requested a sentence of 29 years in prison with

4 years of credit for time served. The State, arguing that the crime was incredibly heinous and violent, requested the court sentence defendant to 40 years in prison. Defendant then stated that he wished to go to trial to present his side of the story to avoiding looking like a "jealous husband that murdered his wife." Defendant wished to present evidence from family members who would testify to his good character as a father and husband, that he was trying to get out of the marriage at the time of the incident, and that he constantly begged God for forgiveness. The court then explained to defendant that a Rule 402(d) conference presumed he would plead guilty, and that he should terminate the conference if he wished to go to trial. Despite the court's admonishment, defendant did not request termination of the conference, and the court recommended a sentence of 50 years' imprisonment.

¶ 11    On February 1, 2023, the parties appeared for a plea hearing. Defendant assured the circuit court that he entered his plea of guilty voluntarily and not under threat or coercion. The State then provided a factual basis. The State indicated that officers arrived on scene on April 22, 2019, to find a Kia Optima on fire and two bystanders extinguishing flames from Billups's body, who appeared dead. Officers also discovered an open diesel fuel supplement on the back seat and lighter fluid in the front center console. Prior to the vehicle fire, defendant pulled Billups's hair while she drove. When Billups pushed back, defendant poured lighter fluid on the back of her head. The State indicated that "a struggle may have happened and that part of [defendant's] cigarette" set Billups on fire before defendant jumped from the moving vehicle. Defendant then fled to Memphis with another female. The State indicated that two bystanders, Joseph Robertson and Andrew Hoedebeckem, witnessed the incident. Robertson told officers that he heard arguing, saw a black man running from the scene, and heard him yell: "You bitch, take that." Hoedebeckem informed

4

officers that he saw a vehicle on fire and a black man running on the sidewalk parallel to the vehicle.

¶ 12　In addition, the State asserted that Dr. Marissa Feeney conducted an autopsy, confirming Billups's cause of death as thermal trauma to the airway and smoke inhalation. Forensic scientist James Riggins confirmed that Billups's hair and shirt tested positive for an inflammatory substance similar to the fuel supplement that defendant previously purchased. Following the incident, officers spoke with defendant's mother, Linda McKissick, who stated that defendant called her after the incident. According to Linda, defendant referred to Billups when he stated: "Mom, I messed up. Mom, I set that girl on fire, Mom."

¶ 13　Following the State's factual basis, defendant spoke out in court, insisting that Billups's death was an accident. Later, however, defendant said, "I'm pleading guilty. Yeah. I'm guilty of that." Defendant then attempted to dispute the State's factual basis, at which time, the circuit court interrupted defendant, stating: "[I]f you plead guilty, you're giving up the opportunity to explain that to the jury, and maybe the jury finds it was an accident. If you plead guilty, you're giving up that chance. I just want to make sure you understand that." Defendant expressed his desire to proceed with the plea deal. Finding defendant's guilty plea voluntary, the court accepted defendant's plea.

¶ 14　On May 16, 2023, the circuit court held defendant's sentencing hearing. Prior to imposing sentence, defendant stated in allocution that he did not realize Menges would ask for anything other than the death sentence, he regretted killing Billups, and that he deserved to die in prison. The court sentenced defendant to 57 years in prison.

¶ 15　On June 14, 2023, Menges filed motions to withdraw defendant's guilty plea and reconsider sentence. Shortly thereafter, defendant sent a letter to the circuit court requesting new

5

counsel, claiming that Menges never discussed his mental health history with him and failed to prepare a defense. The court ordered the public defender's office to assign defendant new counsel. Thereafter, Brian Flynn represented defendant. Flynn filed a new motion to withdraw defendant's guilty plea. Defendant, arguing he had a defense worthy of consideration, claimed ineffective assistance of counsel. He asserted that his guilty plea was involuntary, that Menges failed to properly investigate defendant's mental health history, and that Menges failed to allow defendant to review all discovery prior to his plea.

¶ 16    On February 13, 2024, the circuit court held a hearing on defendant's motion to withdraw guilty plea. From the outset, Flynn affirmed that he would not proceed on defendant's prior motion to reconsider sentence. Defendant then testified that Menges bullied him to accept the State's plea, claiming Menges only discussed the option to plead guilty, and failed to investigate his mental health history. On cross-examination, defendant acknowledged that he had two months to review his complete discovery prior to the current hearing. He also recalled that Menges recommended him not to accept the State's offer at the plea hearing. Despite this, defendant accepted the State's plea offer. Defendant testified that he had a viable defense and asked Menges to have his cousin, Pedro Wilson, testify that defendant, despite Billups's affair, was not jealous but wanted to leave Billups.

¶ 17    Menges then testified that he met with defendant multiple times and provided him with redacted copies of discovery in jail. Menges testified that he had a defense prepared for trial, although he explained to defendant that certain defenses were not available to him. Menges explained that he originally believed that he could get a favorable plea deal that would allow defendant to finish his prison sentence before he died. After the Rule 402 conference, however, Menges realized that the only way to avoid defendant dying in prison was to proceed to trial and

6

somehow win. Thus, defendant accepted the State's plea offer against his advice. Menges further testified that he did not want to highlight defendant's mental health issues because he believed that the extreme nature of the charges, combined with defendant's mental health issues, would lead the circuit court to conclude that defendant would be violent following release from prison. Thus, not raising defendant's mental health issues was part of his sentencing strategy. Following the hearing, the court denied defendant's motion to withdraw guilty plea. Defendant timely appealed.

¶ 18                                II. Analysis

¶ 19     On appeal, OSAD concludes there is no reasonably meritorious argument that the circuit court erred by denying defendant's motion to withdraw guilty plea. A defendant has no absolute right to withdraw his guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Rather, he must show a manifest injustice under the facts involved. *Id.* Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or law, or where there is doubt of his guilt and justice would be better served through a trial. *Id.*

¶ 20     Defendant's motion raised four issues. Defendant first contended that Menges was ineffective because he bullied him into accepting the State's plea, gave conflicting advice about entering a plea or going to trial, and would not prepare a defense for trial. A guilty plea is involuntary if it results from the ineffective assistance of counsel. *People v. Hall*, 217 Ill. 2d 324, 334-35 (2005). A challenge to a guilty plea alleging ineffective assistance of counsel is subject to a modified version of the *Strickland* test. *People v. Hughes*, 2012 IL 112817, ¶ 44 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A defendant seeking to withdraw a plea must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty

7

and would have insisted on going to trial. *People v. Brown*, 2017 IL 121681, ¶ 26 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶ 21    We first note that defendant failed to present evidence that Menges bullied him into accepting a plea deal. At the plea hearing, defendant assured the circuit court that no one made threats or promises to induce his plea. A "proper and meticulous admonition of the defendant," per Rule 402(b), "cannot simply be ignored." *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993) (citing Ill. S. Ct. R. 402(b)). Moreover, at the hearing on the motion to withdraw his guilty plea, defendant presented no evidence that Menges intimidated him into pleading guilty.

¶ 22    Menges explained that he initially believed that he could get a favorable plea deal that would allow defendant to finish his prison sentence before he died. However, following the Rule 402(d) conference, Menges believed that defendant's only chance of not dying in prison was to go to trial. As such, Menges prepared a defense for trial. At the plea hearing, however, defendant pleaded guilty against his advice. Although Menges did not have a strong belief that his defense at trial would succeed, he still believed it was defendant's best chance to avoid a life sentence. See *People v. Wilson*, 295 Ill. App. 3d 228, 237 (1998) (attorney's honest assessment of a defendant's chances at trial cannot support a claim that counsel's ineffective assistance rendered a plea involuntary). Based on the foregoing, we cannot find defendant presented a meritorious argument that the court erred by denying defendant's motion to withdraw plea.

¶ 23    Defendant's second claim was that Menges did not investigate his mental health history. Initially, we note that defendant's mental health records were not attached to his motion to withdraw plea and do not appear elsewhere in the record. Rule 604(d) requires any claims based on facts outside of the record to be supported by affidavit. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Thus, defendant has forfeited this issue. Forfeiture aside, Menges testified that he did not want to

introduce defendant's mental health history for strategic reasons. Strategic choices are virtually unchallengeable because such a choice "is a matter of professional judgment to which a review of a counsel's competency does not extend." *People v. Cundiff*, 322 Ill. App. 3d 426, 435 (2001); see also *Strickland*, 466 U.S. at 690. Without knowing precisely what defendant's mental health records would show, we cannot conclude that Menges's strategy was unsound. Moreover, as OSAD points out, the records would have been relevant, if at all, as mitigation at sentencing. Thus, their absence could not have influenced defendant's decision to plead guilty. See *Brown*, 2017 IL 121681, ¶ 26 (defendant must show reasonable probability that but for counsel's errors, he would not have pleaded guilty).

¶ 24 Defendant's third claim was that he was unable to view all of the discovery until he reported to prison. A defendant does not have a constitutional right to read the discovery materials provided to his attorney. *People v. Walker*, 2019 IL App (3d) 170374, ¶ 16. An attorney's decision to share discovery materials with a defendant is "afforded a strong presumption that it was the product of sound trial strategy rather than incompetence." *Id.* ¶ 18. A defendant may be able to rebut the presumption by showing that counsel withheld discovery information that cast doubt on the State's ability to prove him guilty or was otherwise particularly relevant to his decision to plead guilty. *Id.* Defendant has made no such showing here. Although it is undisputed that defendant was able to view all of the discovery after the plea, he has not specifically identified anything that would have affected his decision to plead guilty had he seen it earlier.

¶ 25 Defendant's final claim in the motion to withdraw guilty plea was that he had a defense worthy of consideration. We cannot agree. Throughout the proceedings, defendant vacillated between accepting responsibility—requesting the death penalty multiple times—and attempting to avoid responsibility by declaring Billups's death an accident. However, at no point did he produce

9

facts that would establish a defense. When pressed on cross-examination, he suggested that defense counsel should have contacted his cousin, Wilson, to testify that defendant was not jealous of his wife's affair. However, he never explained how this would have established a viable defense. In light of the State's factual basis, which included eyewitness testimony, physical evidence connecting defendant to the accelerant used, and defendant's own statements, it is difficult to envision a viable defense under the circumstances.

¶ 26 OSAD next suggests that there is no meritorious argument that postplea counsel was ineffective for failing to pursue Menges's motion to reconsider sentence. Generally, whether to file a motion is a matter of trial strategy. *People v. Wilson*, 164 Ill. 2d 436, 454-55 (1994). Menges's motion argued that defendant's sentence was "excessive" but did not provide any specific arguments or identify any facts tending to show that the sentence was an abuse of discretion, other than to point out that "the court was unaware of Defendant's complete mental health history." As noted, however, defendant's mental health records were not made part of the record. Thus, we cannot conclude that Flynn's failure to proceed on Menges's motion to reconsider was not sound strategy.

¶ 27 OSAD's third proposed issue is whether the circuit court erred by finding defendant fit for trial. OSAD notes that, although defendant did not raise the issue in his motion to withdraw plea, a defendant's fitness for trial is a fundamental right (*People v. Sandham*, 174 Ill. 2d 379, 382 (1996)) that can be considered as plain error (*People v. Moore*, 408 Ill. App. 3d 706, 710 (2011)). "A defendant is considered unfit to stand trial if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *People v. Coleman*, 168 Ill. 2d 509, 524 (1995). "Fitness speaks only to a person's ability to function within the context of trial; it does not refer to sanity or competence in other areas." *Id.*

10

"A person can be fit for trial although his mind may be otherwise unsound." *Id.* A fitness finding cannot be based solely on a stipulation to the existence of psychiatric findings. *People v. Cook*, 2014 IL App (2d) 130545, ¶ 14. The circuit court must be "active, not passive, in making the fitness determination." *Id.*

¶ 28 Here, the circuit court confirmed that defendant reviewed the fitness reports with his attorney and was familiar with Dr. Cuneo's conclusions. Defendant stated that he understood his right to contest the findings at a separate hearing but confirmed that he wanted to stipulate. He stated that he was not currently on any medication that would impair his ability to understand the proceedings, that he understood who the parties were, and was aware of the charges against him. He understood what a jury trial was. The court then stated:

"All right. I'm going to accept your statement to me that you want to stipulate or agree to *** Dr. Daniel Cuneo's findings, and I find that he is qualified. The parties are stipulating that he is qualified to make these findings. I'm familiar with him. He has testified in this court and in many of the courts here in this jurisdiction, and he's qualified to make these findings. So I am going to find that you are, based upon the conclusions of Daniel Cuneo, that you are fit to stand trial."

The court's remarks show that it made an independent finding that defendant was fit and did not merely rely on Dr. Cuneo's report or defense counsel's stipulation to it.

¶ 29 Similarly, at the second fitness hearing, the circuit court confirmed that defendant reviewed the report with his attorney and was aware of Dr. Cuneo's findings, that he had the right to stipulate to the findings or contest them, and that he wanted to stipulate. The court then said, "I will find, based upon the stipulation, based upon [defendant's] response to my questions and also the conclusions in the report that I read from Dan Cuneo dated September 10th of 2021 that

11

[defendant] is fit to stand trial." Thus, the court explicitly stated that it based its decision on both Dr. Cuneo's findings and defendant's answers to the court's questions. Because the court exercised its discretion in finding defendant fit, we agree that there is no meritorious issue in this regard.

¶ 30    OSAD's final potential issue is whether the circuit court erred by failing to conduct a *Krankel* hearing after defendant wrote the court a letter complaining that his counsel was ineffective. When a defendant makes a *pro se* postplea claim that defense counsel was ineffective, the trial court must inquire into the basis for the claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003); see *People v. Krankel*, 102 Ill. 2d 181 (1984). Merely allowing counsel to withdraw and appointing new postplea counsel does not satisfy the *Krankel* inquiry requirement. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 51.

¶ 31    Here, the circuit court never conducted a preliminary *Krankel* inquiry, and instead simply appointed Flynn to replace Menges. OSAD concludes, however, that any error was harmless. Ultimately, the court found defendant's claims meritless after the court considered the substance of defendant's ineffective assistance claims at the hearing on the motion to withdraw plea, at which time both defendant and Menges testified. Thus, we agree that any error by failing to conduct a preliminary *Krankel* hearing was harmless. See *People v. Jackson*, 2020 IL 124112, ¶ 127 (failure to conduct a preliminary *Krankel* inquiry is harmless if the trial court ultimately considers the *pro se* claims). Thus, there is no meritorious issue for appeal.

¶ 32                                    III. Conclusion

¶ 33    Because there is no reasonably meritorious issue for appeal, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 34    Motion granted; judgment affirmed.